**NORTH AMERICAN REFRACTORIES COMPANY, Appellant,**

v.

**Minerva JACOBS, Appellee.**

Court of Appeals of Kentucky.

April 24, 1959.

Thos. D. Theobald, Jr., Grayson, for appellant.

H. R. Wilhoit, Grayson, for appellee.

CLAY, Commissioner.

This suit was brought by appellee, the lessor in a clay mining lease, for a declaration of rights and for alternative and supplemental relief. Appellee asserted the lease had terminated. The Chancellor adjudged (1) the lease had been extended, and (2) appellant lessee would be required to mine not less than 1,200 tons of clay every six months until all the usable clay had been mined from the tract.

Appellant lessee contends the judgment was erroneous in fixing new terms of the lease. Appellee lessor, by cross-appeal, takes the position that the Chancellor should have adjudged the lease terminated, and if not, the terms fixed by the court do not conform to the lease and impair her rights thereunder.

The original lease was executed on April 28, 1945, and the pertinent provision thereof reads as follows:

"It is understood and agreed between the parties hereto that this lease is for

five years beginning April 28th, 1945, and ending April 28th, 1950, provided however that the lessee may at his option renew said lease for a period of five years upon the same terms and conditions. In the event that the said lessee *is operating and mining clay at the expiration of the term herein, if renewed,* then it is mutually agreed that the lease shall be extended to permit said lessee to mine all clay under said property. Before any renewal shall be effective however, the lessee shall give lessor sixty days written notice of the exercise of said option to renew." (Emphasis ours.)

The lease was properly renewed for the additional five year term ending April 28, 1955. On February 25, 1955, appellant by letter advised appellee, "we are extending the terms of the lease until all clay has been mined from the property". The lease does not recognize this method of effecting a second renewal or extension.

As of April 28, 1955, except for test purposes, appellant had not mined any clay. In December, 1954, it had engaged a third party to mine the clay, and work had been done on the premises to uncover it for stripping. Apparently the construction of a highway delayed the movement of a mining shovel to the tract in the declining days of the lease. However, in 10 years appellant had not extracted, for commercial purposes, a single ton of clay.

■■ At the expiration of the renewed term, on April 28, 1955, while appellant may have been "operating" on the premises, it was not "mining" clay. Mining means the excavation or removal of minerals from a natural deposit. Buchanan v. Watson, Ky., 290 S.W.2d 40; Ozark Chemical Co. v. Jones, 10 Cir., 125 F.2d 1. See 27 Words and Phrases, "Mining", and Pocket Part. The Chancellor did not find that appellant had complied with these terms so as to authorize an extension of the lease, and appellant does not so contend in its brief.

The Chancellor did conclude that the acceptance by appellee of three royalty checks for the months of May, June, and August, 1955, coupled with other conduct on her part, constituted an acknowledgment that the lease had been extended.

In Wieck v. Glindmeyer, 229 Ky. 28, 16 S.W.2d 487, it was held that acceptance of rental after the expiration of a term of a lease did not effect an extension or renewal when the lease provided a specific method of accomplishing this result.

It is necessary to examine the conduct of the parties after April 28, 1955. On May 25, appellee's lawyer acknowledged receipt of appellant's February 25 letter (wherein appellant purported to extend the lease by written notice). He pointed out that the term of the lease could not thus be renewed, and if it was extended, appellant would be obligated to mine all of the clay under the property. This letter also stated that the original royalty terms were no longer effective, and requested an increase in the royalty. In answer to this letter on June 6, appellant advised that it disagreed with the interpretation of the lease provisions and construed the lease as giving appellant the right "to surrender if we deem it advisable".

■ It is evident from this correspondence that the parties were in utter disagreement concerning the terms under which the lease might be extended, and we fail to see how appellee's conduct could constitute a waiver of the terms of the lease or consent to an indefinite extension of it.

■ Since appellant, on April 28, 1955, was not "mining" clay on the leased premises, the lease was not automatically extended. Any waiver of this provision by appellee was expressly conditioned upon appellant's acceptance of her construction of appellant's obligations during the extension. Appellant declined to meet these terms, and, consequently, neither was the lease extended nor did appellant acquire

any new rights by virtue of a subsequent agreement.

The Chancellor tried diligently to work out an equitable solution of the difficulties. Though laudable in certain respects, it did not conform to the legal rights which the parties had fixed for themselves. It was necessary to write a new contract for them, and this the court may not do. Garnes v. Frazier & Foster, Ky., 118 S.W. 998; Wilhoit v. Furnish, 295 Ky. 356, 174 S.W.2d 515, 149 A.L.R. 941.

We are of the opinion the Chancellor should have adjudged the lease terminated, and should have granted appellee such incidental relief as was proper under the circumstances.

The judgment is reversed on both the original and the cross-appeal for proceedings consistent with this opinion.