## Love, et al. v. Kozy Theatre Company, et al.

## Kozy Theatre Company, et al. v. Love, et al.

(Decided November 11, 1921.)

## Appeals from McCracken Circuit Court.

1.  Contracts—Restraint of Trade.—A contract in restraint of trade is not one which in fact restrains or may restrain trade, and the material consideration in determining whether a monopoly exists. is not that prices are raised and competition excluded, but that the power exists to raise prices and exclude competition when it is desired so to do.

2.  Contracts—Restraint of Trade.—Combinations and contracts which tend to create a monopoly are against public policy and therefore illegal, because they deprive the community of the benefits of competition and thus place the power to control production and fix prices in the hands of a few persons and corporations.

3.  Contracts—Monopolies—Restraint of Trade—Motion Pictures.— Where the only motion picture houses in operation in a city are controlled by one set of people, and it is shown that they have so combined their interests to prevent competition and have prevented other shows from exhibiting in the city, and have leased available vacant property to avoid competition by other exhibitors, thus confining the patrons within narrow limits of choice as regards the price and character of shows to which they are privileged to attend, and it also appears that one of the controlled houses is kept dark, another is open only on Saturdays and special occasions, held to be such evidence of a monopoly that a contract of lease for one of the houses is void, being in restraint of trade.

4.  Contracts—Restraint of Trade.—Contracts in restraint of trade have never been considered as entitled to any special indulgences in the administration of the laws, and before they can be upheld it must clearly appear that they do not impose any unreasonable restraint upon trade.

5.  Contracts—Restraint of Trade.—The common law doctrine of restraint of trade, as well as the statutes on the subject, are in force in the state of Kentucky.

HENDRICK & BURNS and HAZELRIGG & HAZELRIGG for Love, et al.

WHEELER & HUGHES and BRADSHAW & McDONALD for Kozy Theatre Co., et al.

OPINION OF THE COURT BY JUDGE QUIN—Reversing on the first appeal and affirming on the second appeal.

The Arcade Theatre located in Paducah was operated by a corporation whose stock was held by Leo F. Keiler, his wife Irene B. Keiler and Lawrence Dallam. The theatre was used for many years exclusively for motion pictures and later vaudeville was added to the program. After the dissolution of the corporation in 1919, the theatre was operated by the three stockholders as a partnership.

The Kozy Theatre, prior to March 26, 1918, was owned by R. C. Davis and Rankin Kirkland. During the same period the Star Theatre was operated and conducted by Dave Desberger as a motion picture house. Adjacent to the Palmer House was the Kentucky Theatre which was operated by the hotel company. It does not appear that either of the last two theatres had a very profitable existence and as the result of negotiations the control of these two were taken over by the owners of the first two named.

The Kozy Theatre Company was organized to operate the Kozy and Star theatres; stock in this company was subscribed by Davis, Kirkland, Keiler and Dallam. Thus the owners of the Arcade Theatre became joint owners of the Kozy and Star Theatres.

While the Kentucky Theatre had been used chiefly for the production of "road shows" it is testified that it was also equipped as a motion picture house. As result of further negotiations between the parties in interest a contract of lease was entered into on July 1, 1918, between the Kozy Theatre Company, the Arcade Company, Dallam, Keiler, Davis and Kirkland, by the terms of which they leased the Kentucky Theatre for a period of one year, with the privilege of renewal from year to year for the three succeeding years, at a rental of $1,800.00 per annum. This rental was paid as due under successive notices or renewals until the tendered rent for the year 1920 to 1921 was refused.

August 8, 1919, the hotel company leased its hotel and other buildings, including the theatre, for a term of fifteen years to Love & Green. In April, 1920, Love, who in the meantime had acquired Green's interest in the lease, assigned to Rehkopf all his rights in and to the theatre. Love and Rehkopf not only refused to execute a new lease to the Kozy Company, but in July, 1920, filed forcible detainer proceedings against the lessees and obtained a judgment of restitution in their favor. Upon appeal to this court it was held that the Kozy Theatre

Company and other lessees were entitled to hold the premises under the exercise of the option provided in the lease and that Love and Rehkopf were without right to evict.    191 Ky. 595, 231 S. W. 249.

The present action was instituted in June, 1920, by the Kozy Theatre Company, et al., seeking the specific performance of their contract of lease; for an order requiring Love and Rehkopf to execute a renewal lease for the period from July, 1920 to 1921, and for reformation of the lease.  It was alleged in the answer and counterclaim filed in this equity suit that this lease was executed pursuant to a contract in restraint of trade and that there existed in Paducah in the picture show business an illegal combination and monopoly.  Though of the opinion that such a combination, resulting in the suppression of competition did exist, the lower court dismissed the petition and counterclaim on the theory that in such a suit the court was without authority to cancel the lease or declare it void.  From this judgment all parties have appealed.

Whether the control, operation and management of the motion picture business in the city of Paducah, as disclosed by the record before us, is monopolistic in fact or is such as to constitute an unlawful combination in restraint of trade, is (to use the language of counsel for the Kozy Theatre Company, and other lessees, to whom we will refer as appellants) the one unadjudicated point raised by these appeals.

The majority of the court is of the opinion that the lease is void.  A contract in restraint of trade is one which in fact restrains or may restrain trade, and the material consideration in determining whether a monopoly exists is not that prices are raised and competition is excluded, but that power exists to raise prices and to exclude competition when it is desired to do so.   Joyce on Monopolies, sec. 67; or as stated by the same author in section 65 of the same work:

"The idea of monopoly as understood at the present time includes the suppression of competition by unification of interests or management, or through agreement and concert of action.  It is the power to control prices which makes both the inducement to make such combinations and the concern of the law to prohibit them."

A monopoly in the modern sense is created when, as a result of efforts to that end, previously competing businesses are so concentrated in the hands of a single person or corporation, or a few persons or corporations act-

ing together, that they have power to practically control the prices of commodities and thus to practically suppress competition. United States v. American Tobacco Co., 164 Fed. 700. Same case 221 U. S. 106.

Contracts and combinations which tend to create a monopoly are against public policy and therefore illegal, because they deprive the community of the benefits of competition and thus place the power to control production and fix prices in the hands of a few persons.

A monopoly exists where all or nearly all of an article of trade or commerce within a community or district is brought within the hands of one man or set of men, as to practically bring the handling or production of the commodity or thing within such control to the exclusion of competition or free traffic therein. Grogan v. Chaffee, 156 Cal. 611, 105 Pac. 745.

The word "monopoly" as now used and understood embraces any combination the tendency of which is to prevent competition in the broad and general sense or to control prices to the detriment of the public. Pocahontas Coke Co. v. Powhattan Coal & Coke Co., 60 W. Va. 508, 56 S. E. 264, 10 L. R. A., N. S. 268, 116 A. S. R. 901.

The witnesses refer to the existence of motion picture houses in Paducah, other than the Kentucky, Kozy, Star and Arcade, none of which, however, has been in operation during the past few years. We are led to believe those were of an inferior order, small seating capacity, with little or discouraging patronage, and so much so that they were suffered to run down and finally close their doors. At least one of them was later converted into a mercantile establishment. It is admitted that the four named are the only theatres now open to the public.

Owned and operated as they are by an interlocking directorate or management their joint operation is manifestly in the interest of the owners, with little regard for the best interest of the people. Though one specializes in vaudeville, another in pictures, a third is for road shows and the fourth gives prizes to attract the crowd, there is in reality no competition between them. But two of them have full time shows. The Kentucky has been dark almost from the day it was taken over by appellants. The Star is open only on Saturdays, holidays and special occasions. Thus, in their restricted opportunities, the theatre goers of this thriving and prosperous city are confined within narrow limits of choice as regards the

price and character of show to which they are privileged to attend. These patrons are wholly dependent upon the selection and taste of the representatives of the combine, and while it is natural to suppose they would book such attractions and contract for such pictures as would, in their judgment, induce the maximum of patronage, yet a keen rivalry among two or more competing houses, offering a variety of pictures and entertainment, at possibly different prices of admission, would give to the public the right of choice, not requiring them to be dependent upon the offerings of a single individual or a combination of interests.

After the acquisition of the Kentucky by appellants, a stock company, which had been playing there, canceled its engagement and efforts by others to lease this theatre for outside attractions, such as Field's Minstrels, etc., failed.

The extent of appellants' operations in Paducah in their exclusive control of the motion picture business is evidenced by the fact that they sought to and did actually lease vacant property in the city suitable for amusement purposes and prevented its use by any competitors.

Desberger, who operated the Star, was paying a net rental therefor of $130.00 per month, but it was taken over by appellants on a basis that nets Desberger $100.00 per month. The increased rental is paid, notwithstanding the fact that the Star is only open on Saturdays and holidays, and this rental greatly exceeds that paid for the use of the Kentucky, and which latter has about three times the seating capacity of the Star.

It is in evidence, though denied, that one of the appellants stated that since the combination he felt they were keeping out competition. Also that the same person said they had lost money on their picture houses fighting competition and that when the Kentucky was open it hurt the other two houses.

These and other facts in the record justify the conclusion that a monopoly exists in the picture show business in Paducah and that the contract of lease was one in restraint of trade. Such contracts have never been considered as entitled to any special indulgences in the administration of the laws and before they are upheld it must clearly appear that they do not impose any unreasonable restraint upon trade, as such restraint can only tend toward the creation of monopolies. Torian v. Fuqua, 175 Ky. 428, 194 S. W. 359.

An agreement between rival hotel owners under the terms of which one agreed to keep his hotel closed for three years, reserving only the right to rent same for offices and rooms for one week or more in consideration of which the other hotel agreed to pay the first named an agreed monthly rental, was held in Clemons v. Meadows, 123 Ky. 178, 94 S. W. 13, 6. L. R. A. N. S. 847, 124 A. S. R. 339, to be in restraint of trade, as a hotel is a quasi public institution. And so a contract under the terms of which the parties agreed not to engage in the ice business in the city of Louisville was held in Merchant's Ice & Cold Storage Co. v. Rohrmann, 138 Ky. 530, 128 S. W. 599, 137 A. S. R. 390, 30 L. R. A. N. S. 973, to be illegal, as it was a part of the scheme to control the ice business and as such it was unreasonable and in restraint of trade under Ky. Stats. 3915. It mattered not, says the court, that no effort was made to control, raise or fix the price of ice.

Not only have we statutes on the subject but the common law doctrine of restraint of trade is in force in this state and as said in Gay v. Brent, 166 Ky. 833, 179 S. W. 1051:

"They are living, companion pieces of the law, and either may be invoked, whichever is the most available, for the purpose of staying the unlawful activities of any agreement, pool, trust, combination or monopoly created or entered into by any corporation, partnership or association of persons for the purpose of suppressing competition, controlling the market, or regulating or fixing the price of any species of property."

Every scheme or combination having for its purpose the control of a business or the market in any commodity and the fixing of prices, necessarily tends to restrain trade and suppress competition in the article or business sought to be controlled. And when an unlawful attempt is made to restrain trade and get control of the market or of a business such as exists in the present instance it presents a situation so obnoxious to the spirit of the law as to demand the interposition of the courts, and such being our duty we are compelled to hold that the effect of the lease to the Kentucky Theatre was to suppress competition in the motion picture business in Paducah, and that the obtention of said lease was pursuant to and in furtherance of an unlawful combination of interests resulting in an illegal restraint of trade or business and said lease is therefore void. This conclusion being de-

cisive of these appeals renders it unnecessary to enter into a discussion of other points raised on the briefs.

Accordingly the judgment (on the appeal of Love, et al.) dismissing the counterclaim is reversed for further proceedings not inconsistent herewith and the judgment (on the appeal of the Kozy Theatre Company, et al.) dismissing the petition is affirmed.

Whole court sitting.