WASHINGTON THEATRE COMPANY ET AL. *v.* MARION THEATRE CORPORATION

[No. 17,731. Filed October 26, 1948. Transfer denied March 4, 1949.]

*Campbell, Gemmill, Browne & Ewer,* of Marion; and *John H. Edris,* of Bluffton (of counsel), for appellant, Washington Theatre Company; and *J. A. Bruggeman;* and *Barrett, Barrett & McNagny,* all of Ft. Wayne; and *Wagner & Osburn* (of counsel), of Marion, for appellant Connors.

*Cadick & Burns,* of Indianapolis; *Van Atta, Batton & Harker,* of Marion; and *Sturgis & Sturgis,* of Bluffton, for appellee.

BOWEN, J.—William O. Connors and the Washington Theatre Company, appellants herein, were defendants in the court below in a suit brought by the appellee, Marion Theatre Corporation, to impress a constructive trust upon a certain lease given by the said Washington Theatre Company as lessor to William O. Connors as lessee, and to have the said William O. Connors adjudicated and declared to be a constructive trustee of such lease for the use and benefit of appellee, Marion Theatre Corporation. Both William O. Connors and the Washington Theatre Company separately appealed from the judgment in the court below, and these separate appeals were consolidated in this court.

The court below rendered judgment that the appellant, William O. Connors, be declared and held to be a constructive trustee of the lease in question between the Washington Theatre Company as lessor, and William O. Connors as named lessee, and that the appellee, Marion Theatre Corporation, was the sole and absolute owner of such lease. The judgment quieted the title of appellee to such lease against all parties to the action and enjoined appellant, Washington Theatre Company, from recognizing appellant Connors as lessee and enjoined both appellants from interfering with appellee's taking of immediate possession of the premises described in the lease. Appellant Connors was ordered and directed to render a full and complete accounting of all income and receipts from the two theatres covered by the lease from July 1, 1946, and that after deduction of expenses found proper that such funds be turned over to appellee, and that appellant Connors be declared and held to be constructive trustee of such income for the use and benefit of appellee.

Errors assigned for reversal are that the court erred

in overruling appellants' motion for a new trial and that the court erred in each of its conclusions of law.

The grounds of appellant Connor's motion for a new trial were that the decision and finding of the court is contrary to law and not sustained by sufficient evidence; that the court erred in sustaining appellee's objection to certain questions propounded to appellant Connors, and that the assessment of the amount of recovery against him was excessive.

The grounds of appellant, Washington Theatre Company's motion for a new trial were that the findings and decision of the court were contrary to law and were not sustained by sufficient evidence; that the court erred in overruling a motion made by appellant to enter judgment in its favor at the conclusion of appellees' evidence; and that the court erred in permitting witnesses for appellee to answer certain questions over the objection of the appellant.

There was a stipulation of facts in the cause, and the material facts are not in dispute. The appellant, Washington Theatre Company, owned the Indiana and Lyric Theatre properties in Marion, Indiana. Appellant Connors had served as manager and operator of these two theatres for several years prior to June, 1936. Prior to the spring of 1936, one S. J. Gregory, a chain movie operator, and owner of the controlling interest in the Gregory circuit, engaged in negotiations with Connors which led to the formation of the Marion Theatre Corporation, appellee herein. Gregory and Connors agreed that Connors should obtain a lease on the Indiana and Lyric theatres, and that a new corporation would be organized to be lessee, and that the new corporation would pay Connors $10,000, and that he should have 10% of the capital stock of the new corporation without cost as a commission and payment for

his services in negotiating the lease. These agreements and negotiations were all carried out and appellee corporation was formed. Connors was the first president of the new corporation. From June 26, 1936, until July 15, 1946, he was a director of this corporation, and from June 26, 1936, to July 2, 1946, he was an officer of appellee corporation, serving as president and vice-president respectively, and continuously from the formation of the corporation to the time of the trial, he was the owner of 10% of the capital stock of the corporation. From July 1, 1936 to June 27, 1946, Connors was the agent of appellee and looked after appellee's interests in connection with the operation of the theatres.

This first lease entered into on June 27, 1936, by and between appellant, Washington Theatre Company as lessor, and the appellee, Marion Theatre Corporation as lessee, for the real estate upon which the Indiana and Lyric Theatres were located, ran for a period of ten years from July 1, 1936 to June 30, 1946. The appellee took possession of said theatres under this lease, and appellant Connors acted as manager of said theatres for appellee, Marion Theatre Corporation.

From April 5, 1937 to June 19, 1946, the Indiana, Lyric, and another theatre known as the Paramount Theatre in Marion, Indiana, were operated under the terms of a so-called "pooling agreement," between appellee corporation and one Parmond Theatre Corporation, which was the predecessor and assignor of the Hohman-Clinton Realty Corporation, which agreement was approved and consented to by appellant, Washington Theatre Company. In June, 1940, all of the right, title, and interest of the Parmond Theatre Corporation was assigned to the Hohman-Clinton Realty Corporation. Under the terms of this pooling agreement,

the three theatres were operated as a unit and the profits therefrom were pooled and divided between appellee corporation and Parmond Theatre Corporation until the time of the assignment, and thereafter between appellee and Hohman-Clinton Realty Corporation according to the pre-agreed percentage stipulated in the agreement. This agreement further provided:

> "Each of the parties hereto hereby covenants and agrees not to, directly or indirectly, acquire, lease, own, possess or purchase during the period of this agreement, any title, interest, rights, estate or powers in any motion picture theatre or in the operation thereof within the city of Marion, Indiana, without the consent in writing of the other party hereto . . . "

The Hohman-Clinton Realty Corporation is a wholly owned subsidiary of Balaban and Katz Corporation.

Balaban and Katz Corporation was served by publication, did not appear in this action, filed no answer and was defaulted. The court sustained a motion for a judgment in favor of the defendant, Hohman-Clinton Realty Corporation.

The aforementioned third and only other theatre property available for lease in the city of Marion, Indiana, known as the Paramount Theatre, was situated on real estate, the 99 year lease of which is owned by a corporation known as the Marion-Washington Realty Corporation. In 1938 Gregory Circuit, Inc., became the owner of a majority of the voting stock of the said Marion-Washington Realty Corporation, and on March 4, 1939, sold said stock to the Alliance Theatre Corporation, which corporation continuously since such date has been the owner of such stock. On March 4, 1939, the Alliance Theatre Corporation became the owner of a majority of the voting stock in the Marion Theatre Corporation, appellee herein.

The sub-lessee of said Paramount Theatre under a sub-lease from the Marion-Washington Realty Corporation is the Hohman-Clinton Realty Corporation, the successor to the Parmond Corporation. This sub-lease expires October 31, 1949.

During the time when the aforementioned theatres were operated under the pooling agreement, the appellant Connors continued to act as the manager of the same and received his compensation therefor from the pooled funds arising from the receipts of the theatres, one-half of which funds belonged to appellee corporation and one-half to Hohman-Clinton Realty Corporation and its predecessor.

In the spring of 1944, the appellee corporation asked appellant Connors to negotiate for the appellee corporation a renewal lease from the appellant, Washington Theatre Company, on the Indiana and Lyric Theatres, which lease was to begin with the expiration of appellee's lease and to run for ten or fifteen years. It was agreed between appellee and Connors that he would attempt to procure a new lease and appellee agreed to pay him $10,000 as a commission therefor upon his obtaining such lease.

Appellee's officer Gregory inquired of Connors in the fall of 1944 as to the progress he had made in negotiating for a lease and Connors reported that the appellant, Washington Theatre Company, thought it was then too early to start such negotiations.

In the spring, in July, and in the fall of 1945, appellee's officer made similar inquiries of Connors, and Connors reported that he was working on the matter and would notify appellee when the matter was ready to be concluded.

On June 5, 1945, without the knowledge of appellee, Connors procured from The Washington Theatre Com-

pany a written lease in his own name, as lessee, on the same properties, included in the previous lease, to-wit: The Indiana and Lyric Theatres. This new lease to Connors was for a period of fifteen years until June 30, 1961.. This new lease increased the percentage of the gross receipts from the operation of the theatres which was payable as rentals from 12½% to 15%, and provided that the percentage rental was payable upon the gross receipts in excess of $100,000 per year, while the original lease to appellee had provided for the percentage rental to be payable upon gross receipts in excess of $136,000 per year.

There was evidence in the record that prior to the time that Connors had procured this written lease in his own name, dated June 5, 1945, an officer of the appellant, Washington Theatre Company, had told Connors who was appellee's agent that they would make no further lease to Gregory or to appellee, Marion Theatre Corporation.

Connors concealed the fact that he had obtained this lease in his own name from the appellee from the date of the lease until February 27, 1946, although he had more than one conversation with the officers of. appellee corporation regarding such lease after the date upon which he obtained the lease.

On February 27, 1946, Connors mailed to appellee corporation a letter in which he proposed a plan for the operation of the Paramount, Indiana, and Lyric Theatres in Marion, Indiana. Under this suggested plan, the present Paramount Theatre lease was to be extended to June 30, 1961. A corporation was to be organized whereby 40% of the capital stock would be owned by appellee, 40% by Hohman-Clinton Realty Corporation, and 20% by William O. Connors. Connors under the plan was to be the city manager for the three

theatres, and a new agreement was to be entered into between the new corporation and Hohman-Clinton Realty Corporation as the operator of the theatres for a term ending June 30, 1961, and such agreement was to contain such of the provisions of the old operating agreement as were pertinent and applicable. This memorandum was prepared by counsel for Balaban and Katz Corporation and Hohman-Clinton Realty Corporation and was shown to appellant, Washington Theatre Company, prior to the mailing of such proposal to appellee corporation.

On May 22, 1946, the appellee made demand of the appellants, Connors and Washington Theatre Company, that the new lease to Connors dated June 5, 1945, be assigned and transferred to appellee and this demand was refused. Appellee made a proper tender of rental for the month of July, 1946, and the appellant, Washington Theatre Company, rejected such tender, and notified appellee in writing that it would not in the future accept any sums tendered as payment of rental.

The assignments of error question the action of the court in holding that Connors be adjudged to be a constructive trustee of the lease dated June 5, 1945, for the benefit of appellee, Marion Theatre Corporation.

It is not questioned that appellant Connors was an agent and fiduciary of appellee corporation. From July 1, 1936 to June 27, 1946, he had continuously looked after the interests of appellee in connection with the operation of the theatres in Marion, Indiana. He had served continuously as an officer and director of appellee corporation, and he was a stockholder thereof. All of these facts and the fact that he was an agent of appellee were at all times known to the lessor, Washington Theatre Company, appellant herein, and all other parties to this cause. He had agreed to negotiate a new

lease for appellee corporation which agreement subsisted at the time he took the new lease in his own name.

The appellants, however, urge in substance that notwithstanding the fact that appellant Connors was the agent of appellee, the lessor, appellant Washington Theatre Company, was unwilling to accept appellee as tenant, had so notified appellee's agent Connors, and therefore, by the further reason of the court's failure to find that appellee had an expectancy of renewal, the judgment in the court below should have been for appellants. The appellant, Washington Theatre Company, contends that the so-called "general rule" that an owner-landlord cannot ordinarily enter into a future lease with one standing in a fiduciary relationship with its tenant is not applicable where the tenant cannot get a renewal or extension of its existing lease.

There is a broad rule of equity grounded upon the high duty of a trustee or fiduciary to his beneficiary or correlate which does not permit him to acquire an interest in the subject-matter of the trust to the prejudice and detriment of his beneficiary or correlate. A person acting in a fiduciary capacity including an agent, corporate officer, or director, who secretly acquires in his own name, a succeeding or renewal lease on premises which his principal or his corporation is then occupying as lessee, in equity, holds such new lease for the benefit of his principal or his corporation. Under such circumstances, and especially where, as in the case at bar, the facts of such agency and fiduciary relationship are at all times known to the lessor, a court of equity will clearly declare a constructive trust in the lease for the benefit of the principal or corporation and may require an assignment of such lease to the principal or corporation. 32 Am. Jur., § 991, p. 834; *Restatement of Law of Resti-*

*tution,* § 195, p. 801; *Fountain Coal Co.* v. *Phelps* (1883), 95 Ind. 271; *Brannan* v. *Kelley* (1925), 83 Ind. App. 250, 148 N. E. 157; *Indiana Trust Co.* v. *Byram* (1905), 36 Ind. App. 6, 72 N. E. 670; *Gower* v. *Andrew* (1881), 59 Calif. 119; *Lafferty* v. *Jelley* (1864), 22 Ind. 471; *Downard* v. *Hadley* (1886), 116 Ind. 131, 18 N. E. 457; Mechem, *Agency,* Section 469; *Davis* v. *Hamlin* (1883), 108 Ill. 39.

This rule applies whether the lessor would or would not have renewed a new lease to the principal or corporation, and regardless of whether such principal or corporation had any legal or equitable interest in the lease or property which the agent so acquires in his own name. A general statement of such rule has been referred to as an "inexorable principle" of the law, and one which is based upon "that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law. *Trice* v. *Comstock* (1903), 121 Fed. 620; 4 *Pomeroy's Equity Jurisprudence,* § 1050, p. 109 (5th Ed.) ; *Keech* v. *Sandford* (1726), 25 Eng. Reprints 223, 15 Eng. Ruling Cases 455; *L. A. Young Spring & Wire Corp.* v. *Falls* (1943), 304 Mich. 264, 11 N. W. 2d 329; *Mitchell* v. *Reed* (1874), 61 N. Y. 123.

While the appellant lessor notified appellee's agent it would not renew its lease with appellee, it was stipulated that such lessor had knowledge at all times of Connor's position as fiduciary of appellee.

The lessor corporation therefore must be presumed to have known the law and to have intended the legal consequences of its acts. Therefore, in legal contemplation, in dealing with Connors, the agent of

appellee, the lessor was dealing with appellee corporation. The parties' rights under a contract are to be determined by the law as declared by the courts at the time the contract is entered into. 12 Am. Jur., § 240, p. 769; *Long* v. *Straus* (1886), 107 Ind. 94, 7 N. E. 763; *Hancock* v. *Yaden* (1889), 121 Ind. 366, 23 N. E. 253; *Haskett* v. *Maxey* (1892), 134 Ind. 182, 33 N. E. 358.

Appellant Connors while acting as appellee's agent to procure a lease for appellee, secretly procured the new lease in his own name for the identical premises. After Connors had procured this lease in his own name he talked with Gregory, an officer of appellee corporation, in the summer and fall of 1945 and with reference to his progress in procuring a lease stated that he had nothing definite to report yet but there was nothing to worry about. On these two occasions he concealed the fact that he had procured the lease in his own name. In his letter of February 27, 1946 directed to his principal which enclosed a memorandum setting forth that he had procured the lease in his own name, he proposed a plan for the operation of the theatres in Marion, Indiana, in which appellee might participate but in which the interest of Connors would be increased from 5% to 20%. It would clearly be against conscience to permit Connors to retain the lease in question in his own name, and the court below did not err in its conclusions of law and in holding that Connors was a constructive trustee of the new lease dated June 5, 1945, for the benefit of appellee, Marion Theatre Corporation. The fact that appellee further agreed to pay Connors $10,000 as a commission for his efforts in procuring a renewal lease did not lessen in any degree his duty as a fiduciary to appellee corporation. The application

of the doctrine of constructive trust does not depend upon the contractual obligation of Connors to obtain the lease. This obligation is imposed by law by virtue of the fiduciary relationship.

The appellants by their answers in the court below set forth as a reason for not renewing the lease with appellee corporation the fact that it was discovered in the year, 1942, that the voting control of the stock of the Marion-Washington Realty Corporation, which held a 99-year lease on the third and only other competing theatre in Marion, Indiana; viz., the Paramount, had been acquired by the principal stockholder of appellee corporation. On appeal, the appellants assert that the appellee corporation comes into equity with unclean hands and that appellee corporation seeks to create an illegal monopoly in the motion picture business in Marion, Indiana. The Hohman-Clinton Realty Company, a wholly owned subsidiary of Balaban and Katz Corporation, holds a sub-lease in the Paramount Theatre from the Marion-Washington Realty Corporation which does not expire until October 31, 1949. Therefore, it would be impossible for such monopoly to exist until the expiration of such lease.

The fact that a present monopoly existed in the theatre business in Marion, Indiana, was neither alleged or proved in the court below, and by reason of the fact that the existing lease on the Paramount Theatre does not expire until October 31, 1949, such monopoly does not now exist.

Appellants' fears of the result of a future monopoly are not justified in view of the fact that such illegal monopoly can be prevented when, as, and if such an eventuality should occur, and at the time any attempt might be made to create such illegal monopoly. *Love* v. *Kozy Theatre Co.* (1921), 193 Ky. 336, 231 S. W.

249, 236 S. W. 243; *United States* v. *Paramount Pictures, Inc., et al.* (1948), 334 U. S. 131, 92 L. Ed. 1260.

The appellant further urges that the pooling agreement to which appellant, Washington Theatre Company, consented, created a "joint adventure" and as a consequence thereof fiduciary ties between appellant and appellee, which the appellant asserts were broken upon the acquisition of the stock of Marion-Washington Realty Corporation by the principal stockholder in appellee corporation. The pooling agreement contained a clause prohibiting the parties from acquiring any interest in any other motion picture theatre within the City of Marion, Indiana, without the written consent of the other parties. The Marion-Washington Realty Corporation was the owner of a 99-year lease on the Paramount Theatre.

Appellant Washington Theatre Company's position in this regard, as shown by the pleadings and the record under the issues presented to this court, is, that upon the expiration date of the existing lease on the Paramount Theatre held by the Hohman-Clinton Realty Corporation which is October 31, 1949, the appellee, Marion Theatre Corporation, acting through its officers and directors could thereafter degrade the name and reputation of the theatre in which it held a mere leasehold interest in favor of the theatre, namely the Paramount Theatre, in which it held an ownership interest by virtue of the interlocking directorates, and that this would then cause irreparable damage to the interest of appellant, Washington Theatre Company. We think that fairly considered, such claim of appellant shows no more than a claim of the possibility that fiduciary obligations will be violated in the future by reason of certain events which it contends will occur subsequent to October 31, 1949, at the expira-

tion of the current lease on the Paramount Theatre. Also, the alleged violation of the agreement and breach of fiduciary duty came to the knowledge of appellant, Washington Theatre Company, in 1942 and the parties continued to act under said agreement until its termination in 1946. Such continued operation under said agreement would show an intention on the part of the parties thereto to waive any claim of breach of fiduciary duty.

Appellant, Washington Theatre Company, asserts error in the admission over its objection of the testimony referred to in its specifications 6 to 18 of its motion for a new trial. The appellant contends that such evidence of conversations between Gregory, an officer of appellee corporation, and appellant Connors and the other specified testimony of other witnesses constituted hearsay evidence as to it. All of such material testimony was admissible as against the other defendant in the cause, and as such was proper. *Benjamin* v. *The McElwaine-Richards Co.* (1893), 10 Ind. App. 76, 37 N. E. 362; *Smith* v. *Meiser, Guardian* (1894), 11 Ind. App. 468, 38 N. E. 1092; *Hitt* v. *Carr* (1928), 201 Ind. 17, 162 N. E. 409.

The appellant, Washington Theatre Company, further asserts error in the refusal over such appellant's objection to admit the testimony of Robert M. Sisson, as set out in specification 19 in its motion for a new trial. Sisson was an officer of appellant corporation, and the purport of the testimony as set forth in the offer to prove was that the new proposal submitted by Connors after he procured the lease in his own name was not finally approved by the appellant, and that the officers of appellant would have to see it in its final form and have it approved by their attorneys before they would agree to it. By reason of the issues in the

light of the conclusions we have reached herein, the refusal to admit such testimony was entirely harmless to appellant, and such testimony was superfluous.

Appellant Connors asserts error in the sustaining of appellee's objection to a question propounded to Connors by his counsel while testifying as a witness on his own behalf in which Connors was asked to state the contents of a certain letter. The letter as set forth in the offer to prove stated in substance the talks between Connors and Mr. Balaban and the officers of the Washington Theatre Company had been concluded, and that the foundation had been laid so that the pool could be kept in successful operation for a long time to come.

Section 2-1644, Burns' 1946 Replacement, provides for the introduction of parol evidence of the contents of documents, after a failure to produce the original document upon an order made on reasonable notice on application of either party served on the adverse party or his attorney.

However, before such secondary evidence of the contents of a letter may be introduced, it is necessary that it be shown that such letter was actually in the possesion of the other party or that facts be shown from which such possession of the adverse party could be reasonably inferred. *Lesh* v. *Johnston Furniture Co.* (1938), 214 Ind. 176, 13 N. E. 2d 708.

In the case at bar there is no showing that appellee's officer Gregory received this letter which fact he also expressly denies. In addition, the appellant's testimony was that he put the envelope right alongside his desk, in a basket, where all the mail goes, and then paid no more attention to it personally. There was no showing that the letter in ques-

tion was placed in the United States mails for mailing to the appellee's officer. Therefore, there was no error in the sustaining of appellee's objection to the question asking for the contents of this letter.

Appellant Connors also asserts error in the sustaining of appellee's objection to the following question addressed to him: "I'll ask you to state what motive you had in taking this lease." Bad faith is presumed where a fiduciary acquires a conflicting interest to his beneficiary without such beneficiary's knowledge and consent. It is of no consequence whether fraud is intended under such circumstances. *Olson* v. *Eulette, et al.* (1947), 332 Ill. App. 178, 74 N. E. 2d 609; *Porter* v. *Woodruff* (1882), 36 N. J. Eq. 174, 179; *Consumers Co.* v. *Parker* (1923), 227 Ill. App. 552.

Appellant's expression of his motive or intention in taking this lease was wholly immaterial under the circumstances. Also, any subjective motive in taking the lease which he might have expressed at the trial is obliterated by the fact of his actual motive as shown in the proposal of February 27, 1946, by which he proposed his interest should be increased from 5% to 20%.

There was no error in the court's sustaining of appellee's objection to the question as to appellant's motive in taking the lease.

Appellant Connors asserts that the damages assessed against him are execessive, and that the amount of recovery is erroneous, being too large. The judgment orders that he render to appellee a full and complete accounting of all income and receipts from the Indiana and Lyric Theatres in Marion, Indiana, from July 1, 1946, and adjudges that appellee is the owner of such income after the deduction of such expenses as the court may find proper in an accounting.

The judgment orders the turning over of such income to appellee and provides for a judgment against Connors for any deficiency which may be found due upon such accounting. The judgment simply orders the appellant to turn over to appellee the funds which are due to it as the rightful owner of the lease. We fail to find any element of excessiveness in such judgment.

The appellant questions the lower court's conclusion of law No. 3 which states, "that clause No. 4 of said lease does not prevent or impede the assignment of said lease to plaintiff." Clause No. 4 prohibited the assignment of the lease without the consent of the lessor. Since appellee corporation under the law was the rightful owner of the lease, notwithstanding the fact that the lease was in Connors' name, it was entirely proper for the court to order its assignment to such rightful owner. For the reasons given herein, the appellants cannot complain of such assignment to the rightful owner of the lease, and such conclusion of law by the lower court was correct.

From an examination of the record it appears that the lower court's findings of fact are supported by the evidence; and that the court did not fail to find any material fact within the issues which if found would have necessitated different conclusions of law.

For the reasons given herein, the court below did not err in its conclusions of law, and did not err in overruling appellant, Washington Theatre Company's, and appellant, William O. Connors', separate motions for a new trial.

We find no reversible error and the judgment is therefore affirmed.

Royse, C. J., not participating.

NOTE.—Reported in 81 N. E. 2d 688.